STATE OF HAWAII, Plaintiff-Appellee, *v.* TIM C. H. KIM, Defendant-Appellant

NO. 7899

(FC-CRIMINAL NO. 13)

MAY 27, 1982

RICHARDSON, C.J., NAKAMURA, J., RETIRED
JUSTICE MARUMOTO, IN PLACE OF LUM, J., EXCUSED,
AND RETIRED JUSTICES OGATA AND MENOR,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

On February 25, 1980, Appellant Kim (hereinafter Appellant) was convicted by a jury of rape in the second degree. He now appeals that conviction, alleging that the trial court erred in allowing expert psychiatric opinion testimony to support the credibility of the complaining witness. We find that the admission of such testimony did not constitute a reversible error and therefore affirm the conviction.

I.

Appellant was accused of having sexual intercourse with his thirteen-year-old stepdaughter in violation of HRS § 707-731 (1976).[1] The child complainant was the only witness to the alleged crime which, according to the complainant, took place on July 2 or 3, 1979.[2] The complainant informed her mother of the alleged offense on July 11 and was taken for a physical examination at Kapiolani Children's Medical Center on July 13. On July 20, 1979, she was examined further by Dr. Eberhard Mann, a pediatrician and child psychiatrist employed as a consultant by the medical center. In the

---

[1] § 707-731 *Rape in the second degree.* (1) A person commits the offense of rape in the second degree if:

. . . .

(b) The person intentionally engages in sexual intercourse with another person who is less than fourteen years old.

. . . .

[2] Appellant denied the allegation and presented an alibi defense asserting that he had been playing golf at the time of the alleged incident and that the complainant had fabricated the story to get even with him for having disciplined her.

course of his psychiatric examination, Dr. Mann also interviewed the appellant and his wife, the complainant's mother. It is to Dr. Mann's trial testimony concerning his examination that the Appellant now objects.

During trial Appellant attempted to impeach the complainant's credibility by asking her if she had any "boyfriends", and, after she denied having them, introducing a letter she had written which eventually led to an admission that she did.[3] The trial court ruled that this effort at impeachment placed the complainant's credibility sufficiently at issue so as to allow Dr. Mann's supportive testimony on the issue of credibility.[4] The trial judge specifically limited his testimony to that issue. Appellant nonetheless objected to the testimony on the ground that its prejudicial effect would outweigh any probative value. The objection was overruled.

Dr. Mann's testimony, after he had been qualified as an expert in pediatrics and child psychiatry and affirmed that he had interviewed the complainant, her mother, and the Appellant, was as follows:

Q. Based upon your experience, Dr. Mann, have you had an opportunity to — in the past — to assess the credibility of reported rape cases by children involving family members?

A. Yes.

Q. Approximately how many times have you done this?

A. I would say about 70 times, 70 cases.

Q. And, as a result of your interviews and examinations of these witnesses, have you arrived at conclusions with respect to the truthfulness of these reported rape cases involving family members?

A. Yes.

Q. Upon what do you base your conclusions as to the credibility of such claims?

A. There are several factors. One is the consistency of the account of the alleged sexual abuse. There are some common

---

[3] Appellant's cross examination of the complainant also included questions regarding the complainant's alleged animosity toward the Appellant.

[4] The State originally attempted to introduce Dr. Mann's testimony as substantive evidence of the circumstances surrounding the alleged incident and the complainant's state of mind. The trial judge sustained Appellant's objection to the introduction of Dr. Mann's testimony for these purposes.

emotional reactions we frequently find in victims, which consists of a fear of safety, fear of future sexual abuse, feelings of depression or anxiety, embarrassment to have the alleged happenings known to peers or other people around them, a negative view of sex, some doubts that one parent might be strong enough to protect further sexual abuse.

It's also important to see whether the mental status is basically normal. That means there is no disturbing thinking. That memory functions are intact, and that there is a good sense of right or wrong or fairness and no excessive fantasizing.

Q. Now, as a result of your experience and training in this area, did you come to the conclusion as to the truthfulness of the rape case reported by [the complainant] regarding the incident of July 2nd or 3rd, 1979?

A. Yes. I found her account to be believable.

Q. And was this a result of your interviewing not only [the complainant] but also the defendant and Mrs. Kim in this case?

A. Yes.

Q. Now, in arriving at that conclusion, what factors did you consider?

A. Many of the factors I listed before. I found [the complainant's] account quite consistent. She was very much preoccupied with a fear of safety, which took on some almost phobic dimensions, telling me that she locked herself in her room and shut the windows when she was alone out of fear that the alleged might come back and she might be re-abused. She was quite depressed, showed a negative attitude to sex and seemed somewhat naive in sexual matters, which made it very unlikely that she would have fantasized acts in that specific manner.

Also sense of fairness, I think, made it unlikely that she would make up a story just to get back at somebody.

\* \* \* \* \*

Appellant now asserts that the trial court erred in permitting Dr. Mann to testify in that: 1) permitting the expert's opinion as to credibility invaded the exclusive province of the jury; 2) the subject matter was not properly one which required expert testimony; and 3) the testimony's potential evidentiary value was outweighed by its prejudicial effect.

## II.

In a trial by jury, the jury is the sole judge of the credibility of the witnesses. *State v. Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967). Expert accrediting or impeaching testimony has been recognized to represent a potential threat to this function inasmuch as such testimony may constitute "an invitation to the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." *Comm. v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976). Thus, such testimony has on occasion been held inadmissible as an "invasion of the province of the jury." *See, e.g., United States v. Jackson,* 576 F.2d 46 (5th Cir. 1978) (psychiatrist's opinion regarding witnesses' ability to distinguish truth from fantasy); *Holliday v. State,* 389 So.2d 679 (Fla. App. 1980) (psychiatrist's testimony that witness was not a pathological liar).

We are, however, reluctant to categorically preclude all such testimony, since we agree with the virtually unanimous opinion of commentators that under certain circumstances expert psychiatric testimony may reveal to the trier of fact characteristics or conditions of the witness which may assist the jury's assessment of credibility. *See e.g.,* Goldstein, *Credibility and Incredibility: The Psychiatric Examination of the Complaining Witness,* 137 Am. J. Psychia. 1238 (1980); Saxe, *Psychiatry, Psychoanalysis, and the Credibility of Witnesses,* 45 Notre Dame Lawyer 238 (1970); Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach,* 48 Cal. L. Rev. 648 (1960); McCormick, *Evidence,* § 45 (1972). While a danger may always exist that expert opinion testimony respecting credibility may cause a jury to surrender its credibility assessing function, this danger is, we believe, diminished insofar as such testimony is consistent with its purpose:

> The purpose underlying the testimony of an expert is not to substitute his or her estimation of credibility for that of the jury. Rather, it is to provide a scientific perspective for the jury according to which it can evaluate the complainant's testimony for itself.

Goldstein, *Credibility and Incredibility, supra,* 137 Am. J. Psychia. at 1240.

Various courts have discussed the circumstances under which

the satisfaction of this purpose might be achieved while at the same time preserving the jury's function. One jurisdiction for example permits such testimony only in cases involving sexual offenses, *Ballard v. Superior Court of San Diego*, 64 Ca.2d 159, 49 Cal. Rptr. 312, 410 P.2d 838 (1966), and only after the trial judge is satisfied that such testimony 1) bears upon credibility by showing the effect of a mental or physical condition on her ability to tell the truth, 2) reflects knowledge that can be effectively communicated to the jury, 3) is based on techniques of general acceptance, and 4) has the effect of informing the jury rather than deciding the issue of credibility. *People v. Russel*, 59 Cal.2d 187, 70 Cal. Rptr. 210, 443 P.2d 794 (1968); *People v. Alva*, 90 Cal. App.3d 418, 153 Cal. Rptr. 644 (1979). Similarly, other courts appear to require that such testimony relate to a physical or mental condition affecting the witness' truth telling capacity, *United States v. Wertis*, 505 F.2d 683 (5th Cir. 1974), *cert. denied*, 422 U.S. 105 (1975); *People v. Parks*, 41 N.Y.2d 36, 359 N.E.2d 358 (1976), and forbid the expert witness from providing any specific conclusion respecting whether the evaluated witness is or was telling the truth on a specific occasion. *People v. Parks, id.*

Each of these limitations reflect considerations which should be involved in assessing the admissibility of expert accrediting or impeaching testimony. We do not however at this time believe that it is either necessary or appropriate to establish specific fixed requirements to deal with such testimony.

The preservation of the jury's factfinding functions have represented a continuing concern of the law of evidence. Previously this province has been preserved by limiting expert testimony to matters "of such a character that only persons of skill, education or experience in it are capable of forming a correct judgment as to any facts connected therewith. . . .", *State v. Smith*, 59 Haw. 565, 569, 583 P.2d 347 (1978), and forbidding expert opinion testimony on "ultimate issues" to be decided by the jury. *Cozine v. Hawaiian Catamaran Ltd.*, 49 Haw. 77, 412 P.2d 669 (1966). The modern trend however has been to abandon these somewhat unwieldly limitations in favor of more liberalized constructs which permit the trial court to balance the probable probative value of proffered expert testimony against any deleterious effect and preclude such testimony as will not assist the jury. *See generally*, McCormick, *Evidence*, § 12, 13 (1972). This is, we believe, the better view and has been made a part of our newly

adopted evidence code. Article 7, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (hereinafter Haw. R. Evid.). While the code itself is not by its own terms applicable to the case at bar,[5] we find that the analysis provided therein represents a sufficient and preferable means of assessing the admissibility of all expert testimony and therefore adopt its relevant provisions as the law applicable to this case.[6]

The critical inquiry with respect to expert testimony under our new code is whether such testimony "will assist the trier of fact to understand the evidence or determine a fact in issue. . . ." Rule 702, Haw. R. Evid.[7] Generally, in order to so assist the jury an expert must base his testimony upon a sound factual foundation; any inferences or opinions must be the product of an explicable and reliable system of analysis; and such opinions must add to the common understanding of the jury. *United States v. Fosher*, 590 F.2d 381 (1st Cir. 1979); *See*

---

[5] The rules were not in effect at the time of Appellant's trial inasmuch as their application was limited to "actions, cases and proceedings brought on or after January 2, 1981." HRS § 626-2.

[6] Under the Federal Rules of Evidence, the code upon which our own rules of evidence are modeled, expert testimony regarding mental or emotional conditions or states of mind which reflect on issues ultimately to be determined by the jury have been frequently admitted. *See, e.g.,* United States v. Hill, 7 Fed. Evid. Rep. 688, (3d Cir. 1980) (susceptibility to inducement); United States v. Hearst, 563 F.2d 1331 (9th Cir. 1978) (voluntariness of actions); United States v. Zink, 612 F.2d 511 (10th Cir. 1980) (absence of requisite mental state for a crime); United States v. Smith, 638 F.2d 131 (9th Cir. 1981) (state of mind at time of confession). We believe that the analysis involved in assessing the admissibility of such testimony does not differ so substantially from that involved in the issue at bar so as to require special rules to cover this circumstance.

[7] In United States v. Earley, 505 F. Supp. 117 (S.D. Iowa 1979), it was held that expert testimony respecting credibility was not admissible pursuant to the federal rules inasmuch as, *inter alia,* credibility was not a "fact in issue" within the meaning of rule 702. We do not agree and therefore find that witness credibility may constitute a fact in issue within the meaning of rule 702. This construction is, we believe, consistent with the policy underlying the new evidence code inasmuch as the code mandates that "rules shall be construed to secure . . . [the] promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Rule 102, Haw. R. Evid. We believe that these purposes would not be forwarded by an absolute prohibition of expert testimony respecting credibility which would result from finding it other than a "fact in issue."

Rule 703, Haw. R. Evid.;[8] Rule 705, Haw. R. Evid.[9] Moreoever the probative value of such testimony must not be outweighed by the likelihood of prejudice, confusion or waste of time. *United States v. Fosher, supra. See* Rule 403, Haw. R. Evid.[10]

As applied to expert testimony respecting credibility, the trial court should therefore be satisfied that the expert's contacts with the evaluated witness were such that he had an opportunity to make a thorough and objective assessment. Among the factors to be considered in making such an assessment are the voluntary or coercive nature of the contacts, whether the contacts were intended to result in trial testimony and the thoroughness of the expert's evaluation.[11]

---

[8] Rule 703 *Bases of opinion testimony by experts.* The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

[9] Rule 705 *Disclosure of facts or data underlying expert opinion.* The expert may testify in terms of opinion or inference and give his reasons therefor without disclosing the underlying facts or data if the underlying facts or data have been disclosed in discovery proceedings. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

[10] Rule 403 *Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[11] Among the concerns of those who have discussed this matter is that the circumstances upon which opinions are based may fail to provide a sufficient basis for a reliable conclusion. For example, psychiatric credibility evaluations based on in-court evaluations have been criticized as follows:

But what does a psychiatrist learn from a courtroom observation of a witness? He may observe the witness' mood, pressure of talk, stream of thought, brightness, content of thinking, memory. But an attorney's method of evaluation is exactly the wrong way for a psychiatrist to make an evaluation of an individual. In the courtroom nobody believes anybody. The aura of cross-examination (with its implications and adversity of interests) provides an emotional climate far different from the ideal psychiatric interview. The witness feels attacked and abused, and this immediately elicits defense mechanisms that can only shut out or distort pertinent psychiatric material.

Slovenko, *Witnesses, Psychiatry and the Credibility of Testimony,* 19 U. Fla. L. Rev. 1, 15 (1966). Similarly, the reliability of credibility assessments based on psychiatric interviews which are compelled by court order, *see* State v. Kahinu, 53 Haw. 536, 498 P.2d

The court should also be satisfied that the method by which any diagnosis or conclusion was reached is of sufficient reliability, and that any inferences or conclusions are sufficiently precise, so that the testimony of the expert will meaningfully contribute to the assessment of the witness' credibility. Moreover the jury should be presented with the method by which the conclusions were reached in a manner which will enable the jury to evaluate the mode as well as conclusions of the expert and the information provided should be of a nature not ordinarily available to the jury.[12]

Finally, the trial judge must be satisfied that admission is not precluded by the considerations found in Rule 403, Haw. R. Evid. In addition to the general considerations provided therein, attention should be focused upon whether the proposed testimony unreasonably intrudes upon the witness' privacy; whether admitting testimony of the nature proposed might have the effect of deterring the reporting of crimes of that nature; whether the trial would be unnecessarily delayed or the principal issues thereof detracted from by the creation of a "battle of the experts"; and most significantly,

---

635 (1973); State v. Vincent, 51 Haw. 40, 450 P.2d 996 (1969) (circumstances when court may order examinations), have been subject to criticism insofar as such orders are likely to turn an interview into an inherently antagonistic adversarial process unconducive to objective and useful psychiatric evaluation. *See* O'Neal, *Court Ordered Examinations of Rape Victims,* 18 Santa Clara L. Rev. 119 (1978). *Cf.,* Ballard v. Superior Court of San Diego, *supra* at 849 ("The complaining witness should not, and realistically cannot be forced to submit to a psychiatric examination or to cooperate with a psychiatrist.")

We generally concur with the abovementioned criticisms, however, we do not at this time rule that the fruits of such evaluations would be inadmissible as a matter of law when offered to support or attack the credibility of witnesses since that question is not specifically before us.

[12] The principal though not, in our view, exclusive function of expert testimony respecting credibility is to assess the effect of a reputed physical or psychiatric condition upon the witness' ability to effectively perceive and recount the truth. *See, e.g.,* People v. Parks, *supra;* Jones v. State, 232 Ga. 762, 208 S.E.2d 850 (1974). Thus, such expert witnesses serve less as "lie detectors" than as diagnosticians reporting on the possible effects of mental conditions and limitations. One of the dangers inherent in this sort of testimony, however, is that categorical generalizations based on psychiatric diagnoses may not be of assistance to the jury in determining whether a witness is telling the truth on a particular occasion. Conversely, naked conclusions as to credibility in the absence of comprehensible testimony as to how that conclusion was reached, or conclusions predicated on unreliable systems of analysis, are of little value to the jury.

whether there is a likelihood that the jury will surrender its function to the expert. *See United States v. Benn,* 476 F.2d 1127, 1131 (D.C. 1973); *United States v. Barnard,* 490 F.2d 907 (9th Cir. 1973), *cert. denied,* 416 U.S. 959 (1974).

Expert testimony respecting witness credibility is not, of course, appropriate to all situations. In most cases, the common experience of the jury should suffice as a basis for assessments of credibility. In such cases, even though an expert's assessment of credibility may arguably provide the jury with potentially useful information, the possibility that the jury might be unduly influenced by an expert's opinion would mitigate against admission. When, however, the nature of a witness' mental or physical condition is such that the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a witness, the testimony of an expert is far more likely to be of value, and thus more likely to be admissible when its probative value is measured against its prejudicial effects. Other courts and commentators have recognized such situations to include those involving the allegedly mentally ill witness and the mentally retarded witness, *People v. Parks, supra;* Saxe, *Psychiatry, Psychoanalysis and the Credibility of Witnesses, supra,* and, as in this case, child complainants whose claims are substantially uncorroborated. *People v. Russel, supra.*[13]

The decision of whether or not to admit expert testimony respecting credibility will, of course, rest in the discretion of the trial court and will not be overturned on appeal unless it is manifestly erroneous or a clear abuse of discretion. *State v. Murphy,* 59 Haw. 1, 575 P.2d 448 (1978).

### III.

The opinion of Dr. Mann regarding the credibility of the complainant's story was not, in this case, exclusively predicated upon the absence or presence of any mental or physical condition affecting the complainant's ability to perceive or recount the truth. Rather,

---

[13] The California Supreme Court has gone so far as to suggest that a psychiatric examination of the complainant "would seem a minimum protection for a defendant charged with molesting a child. . . ." People v. Lang, 11 Cal.3d 134, 141 n.3, 113 Cal. Rptr. 9, 13 n.3, 520 P.2d 393 (1974).

the opinion was based upon a comparison of the complainant's behavioral characteristics and mental state with those of others who in the expert's experience had been subject to similar trauma. Thus, Dr. Mann utilized his expertise to provide the jury with two types of information, first, he provided the jury with specific characteristics he had observed to be shared among children who had been raped by family members, and second, Dr. Mann testified that he observed the complainant to exhibit many of those characteristics he found common to other victims so that he believed her story to be believable.

We do not find this comparatively straightforward method of evaluation to be so inherently lacking in usefulness, reliability or precision, or that its content and manner of presentation were so inherently obscure or confusing that permitting its use constituted an abuse of discretion. The characteristics of child sex offense victims provided the jury by Dr. Mann were clearly comprehensible and would not otherwise have been available to the jury but for his testimony. The numerous contacts of the witness with such victims in conjunction with his education and training suggest the sufficient reliability of his information. And finally, although the comparisons performed and conclusions reached by the witness could arguably have been done by the jury, the expertise of the witness as a clinician and his ability to actually compare the conduct and character of the complainant with that of other victims suggests that his opinion regarding the concurrence of these characteristics would be of some assistance to the jury in making their own evaluations. It is significant that Dr. Mann did not simply offer a naked conclusion regarding this concurrence of characteristics but offered in some detail the factual basis for his conclusion, thus enabling the jury to assess the opinion's foundation for itself.

Similarly, we find the circumstances of the witness' evaluation of the complainant to constitute a sufficient factual foundation for his testimony. The interview upon which the witness' opinions were based was a voluntary, out of court evaluation. There is nothing in the record to suggest that the nature of the interview constituted so inadequate a basis for the resultant testimony that its admission constituted an abuse of discretion.

Certainly the most troublesome aspect of Dr. Mann's testimony was his simple opinion respecting credibility — that he "found her

story believable." The opinion, in itself, appears to encroach upon the heart of the jury's function of assessing credibility. *People v. Izzo,* 282 N.W.2d 10 (Mich. App. 1979). However, we hesitate to simply exclude all such testimony insofar as it may, upon occasion, serve the simple purpose of clarifying and consolidating the gist of the expert's testimony, thereby avoiding "awkward and confusing circumlocutions." Commentary R. 704, Hawaii Rules of Evidence.

Pursuant to Rule 704, Hawaii Rules of Evidence, expert opinion testimony embracing an "ultimate issue of fact" reserved for the trier of fact is not in itself objectionable if it is otherwise admissible.[14] Thus, under our new rules, Dr. Mann's conclusion was not in itself objectionable. Nor do we find that the probative value of the statement was so substantially outweighed by the probability that the jury

---

[14] Rule 608(a), Haw. R. Evid., provides that:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
    (1) *the evidence may refer only to character for truthfulness or untruthfulness,* and
    (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. (Emphasis supplied.)

Arguably, this rule would preclude the admission of Dr. Mann's statement since it arguably provided not only his opinion as to the character of the witness, but an opinion as to whether the witness spoke truthfully on a specific occasion. *Cf.,* United States v. Earley, *supra* (polygraph examiner's opinion as to truthfulness precluded by Fed. R. Evid. 608(a)); *see also* United States v. Awkard, 597 F.2d 667 (9th Cir. 1979), *cert. denied,* 444 U.S. 885 (1979) (hypnotist's supporting testimony inadmissible, opinion testimony on credibility limited to character by Fed. R. Evid. 608(a)).

We do not find this to be the case. The scope of questions as to a witness' character for truthfulness pursuant to Fed. R. Evid. 608(a) has been held to include the asking of whether the evaluating witness would believe the defendant under oath, United States v. Lollar, 606 F.2d 587 (5th Cir. 1979), similarly, pursuant to the rule, expert witnesses may be called upon to express their opinion of a witness' veracity. 3 *Weinstein's Evidence* ¶ 608[04] (1981). We see no relevant difference between such opinions and that expressed by Dr. Mann. While his opinion was not couched in terms of character, its function and effect were indistinguishable from traditional character evidence; calling to the jury's attention "what might be an otherwise unknown [characteristic] of the witness and thus give the jury a more adequate basis for judging his testimony." Ladd, *Techniques and Theory of Character Testimony,* 24 Iowa L. Rev. 498, 533 (1939). Essentially, the difference between an opinion as to character for truthfulness and an opinion as to the believability of a witness' statements is the difference between "I think X is believable" and "X's statement is believable." We feel the admissibility of either statement should turn not on niceties of phraseology but on the probative value of the testimony.

would be misled or unduly influenced that its admission was in error. Had the statement presented not been adequately supported by comprehensible testimony which the jury could itself evaluate, or had the opinion not flowed inevitably from such testimony, Dr. Mann's statement most certainly should have been excluded since any use given the statement would have relied more on the witness' status than the testimony's substance. This, however, was not the case. Dr. Mann's opinion respecting the credibility of the complainant naturally followed from the rest of his testimony and thus cannot be considered to be substantially more prejudicial than the testimony which led to the conclusion.

Finally, we do not find that the testimony, taken as a whole, to be so prejudicial as to require exclusion. Considerations of privacy, or undue delay did not arise in this case. The nature of the criteria applied and testimony presented were such that the jury could adequately assess and, if it chose to, disregard, the opinion of the expert. Proper instruction as to the jury's prerogative to evaluate all testimony was given. And the nature of the evaluated witness was such that expert testimony with respect to credibility has been recognized to be of particular value. We cannot say that the trial court abused its discretion in ruling as it did.

Appellant's conviction is affirmed.

*Keith M. Kiuchi,* Deputy Public Defender, for defendant-appellant.

*Colleen K. Hirai,* Deputy Prosecuting Attorney, for plaintiff-appellee.