STATE OF HAWAII, Plaintiff-Appellee, *v.* MICHAEL CASTRO, Defendant-Appellant

NO. 12150

(CR.NO. 86-0923)

MAY 17, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Michael Castro was convicted of attempted murder and assault in the first degree following a jury trial in the Circuit Court of the First Circuit. He asserts on appeal that the judgment of conviction must be vacated because of a score of errors committed by the trial court.[1] Reviewing the record, we conclude the court erred when it (1) admitted evidence of the defendant's aggressive and violent character, (2) permitted expert testimony serving to bolster the complaining witness' credibility, (3) ordered that the defendant be shackled during much of the trial and excluded from the courtroom thereafter, and (4) instructed the jury that it could return a guilty verdict on both attempted murder and assault.[2] Thus, we set aside the judgment of conviction and remand the case for a new trial on the charge of attempted murder.

I.

A.

The scene of the violent episode leading to the prosecution of Michael Castro was the Gardenia Garden where his estranged girl-

---

[1] In the points of error in his opening brief, the defendant alleged the trial court erred by 1) erroneously stating the law of attempted murder and attempted manslaughter, 2) refusing his instruction on attempted manslaughter, 3) instructing the jury that it could find him guilty of both attempted murder and assault in the first degree, 4) allowing expert testimony serving to bolster the complaining witness' credibility, 5) allowing the State's expert witness to testify about his state of mind without ever personally interviewing him, 6) allowing the State's expert witness to testify that he would not submit to an examination, 7) allowing evidence of his prior acts of violence and aggression directed toward the complaining witness, 8) excluding evidence of the complaining witness' use of drugs, and 9) excluding him from the courtroom during a part of the trial.

In his reply brief, the defendant raised a tenth point of error, that he was shackled during the trial.

[2] We find the remaining claims of judicial error are without merit.

friend, Charlotte Harkin, was employed as a dancer. On July 21, 1986, after drinking beer at several other bars, the defendant and his brother Kalen went to the Gardenia Garden to see her. It was after midnight when they entered the nightclub. Castro spotted Ms. Harkin sitting in a booth. When she saw him, she went to apprise her employer of her fear of him. When Ms. Harkin returned to the booth, Castro attempted to engage her in conversation.

Meanwhile, the employer came to the booth and asked Castro to step outside, where she told him not to bother Charlotte Harkin. Castro paid no heed to the advice and went back into the nightclub, joining his brother at the bar. Ms. Harkin was then at the jukebox, placing coins in it in preparation of her performance. Castro suddenly leaped from his seat, grabbed the woman by her hair, and yelled, "let's go." He stabbed her repeatedly in the back and neck with a knife as he dragged her toward the door. He testified at trial that he knew what was happening but just "couldn't stop." The armed attack ceased as suddenly as it began. The assailant then released the victim and fled. Several medical technicians who fortuitously were present came to the victim's aid. She had suffered a life-threatening neck wound and twelve back wounds from the attack. Meanwhile, other patrons of the nightclub and the police gave chase to the assailant. And he was apprehended shortly thereafter.

## B.

The Complaint filed by the Prosecuting Attorney charged Michael Castro with attempted murder, in violation of Hawaii Revised Statutes (HRS) §§ 705-500 and 707-701,[3] and assault in the

---

[3] An attempt to commit a crime is defined by HRS § 705-500 in these terms:

**Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if he:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.

first degree, in violation of HRS § 707-710.[4] The defendant elected to have a trial by jury. The State served notice before trial of its intention to offer testimony describing the defendant's prior acts of violence. It claimed the evidence was admissible under Rule 404(b) of the Hawaii Rules of Evidence (Haw. R. Evid.) since it was probative of the defendant's state of mind at the time the offenses were committed.[5]

The defendant countered with his motion in limine to exclude the testimony, arguing it was being offered "to prove the character of [the defendant] in order to show that he acted in conformity therewith [on the occasion in question.]" *See supra* note 5. The trial court, however, ruled the acts of violence constituted relevant evidence and its probative value outweighed any prejudicial effect it

---

(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

Murder is defined by HRS § 707-701 as follows:

**Murder.** (1) Except as provided in section 707-702, a person commits the offense of murder if he intentionally or knowingly causes the death of another person.

(2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706-606.

[4] Assault in the first degree is defined by HRS § 707-710 as follows:

**Assault in the first degree.** (1) A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person.

(2) Assault in the first degree is a class B felony.

[5] Haw. R. Evid. 404(b) provides:

**Character evidence not admissible to prove conduct; exceptions; other crimes. . . .**

. . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

could have. Hence, when Ms. Harkin testified at trial she recounted prior incidents where Michael Castro slapped her, punched her, threatened her while wielding a knife, held a gun to her head, raped her, and threatened her on the telephone, as well as the events that occurred on July 21, 1986 at the Gardenia Garden.

Before the complaining witness took the stand, however, the State moved to have the defendant shackled. The witness, it claimed, was fearful that Castro would harm her if he could freely move about the courtroom. The trial court granted the request over the strenuous objection of the defendant, finding there was cause to restrain him. The court noted the assault weapon had been placed in evidence and could possibly be reached by the defendant, he had a history of violence, he was versed in martial arts, and he was in an emotional state, as evidenced by his sobbing while prospective jurors were being examined.

The cross-examination of the complaining witness consisted largely of questions related to her feelings about Michael Castro before and after the stabbing and her current relationships and sexual preferences. In the prosecutor's view the examination was damaging enough to warrant an effort to rehabilitate her through expert testimony. The State therefore called Dr. Hall, a psychologist, to the stand, and he was permitted to give an opinion on her credibility when he evaluated her after the attack. The trial court ruled such evidence was admissible under the test for the reception of expert testimony on witness credibility established in *State v. Kim*, 64 Haw. 598, 645 P.2d 1330 (1982).

The State also relied on Dr. Hall's testimony to refute a defense mounted by the defendant, that he was "under the influence of extreme mental or emotional disturbance for which there [was] a reasonable explanation[ ]" when he committed the armed attack. *See* HRS § 707-702(2). There was an outburst from Castro while the psychologist was giving his opinion on the defendant's state of mind at the time of the attack.[6] And Castro manifested hostility

---

[6] The defendant pounded the table and screamed at Dr. Hall. The relevant portion of the transcript of proceedings reads as follows:

Deputy Prosecutor: Now Dr. Hall . . . If I might have a moment, Your Honor.

The Defendant: Talk about humiliate.

Deputy Prosecutor: Excuse me, Your Honor, may we take a recess.

 

toward the witness on another occasion.[7] As a consequence, the defendant was shackled for a substantial portion of the trial and excluded from the courtroom during certain phases of the proceedings.

After the close of evidence, the defendant sought to preclude the possibility of being convicted of two offenses by objecting to the proposed instruction rendering this possible. The State, however, maintained there was sufficient evidence to sustain convictions on both. It claimed the stab wounds to the victim's back constituted evidence of the first degree assault and the life-threatening neck wound was evidence of the attempt to murder. The acts causing the back wounds, it argued, were separated in time from the act causing the neck wound. The trial court overruled the defendant's objection, and the jury subsequently returned verdicts of guilty on both attempted murder in the first degree and assault in the first degree.

## II.

A dispositive issue on appeal is whether the trial court abused its discretion in allowing the jury to hear evidence of the defendant's prior acts of violence and aggression directed at the complaining witness. We begin our analysis of the issue by scrutinizing the evidentiary rule governing the admission of evidence of "other crimes, wrongs, or acts," Haw. R. Evid. 404(b).

### A.

The rule prevents the introduction of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that he acted in conformity therewith." Haw. R.

---

The Defendant: I'm tired of this bullshit, man. Humiliate, I fucking hurt her, man. I didn't fucking want to humiliate her. And the fucking first blow was to her neck you son of a bitch.

[7] In one incident, after Dr. Hall completed his testimony for the day and was leaving the witness stand, Castro allegedly threatened him. Hall said Castro leaned towards him, glared and mumbled something. Although Castro's actual words could not be made out except for "doctor," the court later deemed these actions a threat to the witness.

Evid. 404(b). "[Such evidence] may, however, be admissible where [it] is probative of any other fact that is of consequence to the determination of the [case], such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident." *Id.*

The framers of the rule recognized that "[c]haracter evidence is of slight probative value and may be very prejudicial." Haw. R. Evid. 404 Commentary (quoting Federal Rules of Evidence (Fed. R. Evid.) 404, Advisory Committee's Note). For "[i]t tends to distract the trier of fact from the main question of what actually happened on the particular occasion." *Id.* And "[i]t . . . permits the trier . . . to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." *Id.* Haw. R. Evid. 404(b) thus reiterates the common law rule "that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." E.W. Cleary, *McCormick on Evidence* § 190 (3d ed. 1984) (footnotes omitted); *see, e.g., State v. Apao,* 59 Haw. 625, 638-39, 586 P.2d 250, 259 (1978); *State v. Iaukea,* 56 Haw. 343, 348-54, 537 P.2d 724, 729-32 (1975); *Territory v. Caminos,* 38 Haw. 628, 635-37 (1950).

Yet even when the evidence of other crimes, wrongs or acts tends to establish a fact of consequence to the determination of the case, the trial court is still obliged to exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Haw. R. Evid. 403. For "the use of the word 'may' in [Haw. R. Evid.] 404(b) was 'not intended to confer any arbitrary discretion on the trial judge' but was rather designed to trigger the Rule 403 balance." Haw. R. Evid. 404(b) Commentary (quoting the House Judiciary Committee Report accompanying the Federal Rules of Evidence).

## B.

Evidence of Michael Castro's earlier acts of violence and aggres-

sion was admitted on grounds that it was probative of several matters of consequence in the determination of the case and the probative value substantially outweighed the danger of unfair prejudice. The decision to allow the jury to hear Ms. Harkin's account of Castro's prior conduct, in our view, amounted to an abuse of discretion.

As we observed, when evidence of other crimes, wrongs, and acts is offered by the prosecution, the problem for the trial court is one "of classifying and then balancing[, if necessary]." E.W. Cleary, *supra*. If its purpose is only "to show some propensity to commit the crime at trial, there is no room for ad hoc balancing. The evidence is then unequivocally inadmissible[.]" *Id.* If it is probative of any other fact of consequence in the determination of the case, the court must then consider whether the prejudicial impact of the evidence would be substantially greater than its probative worth. And,

> [i]n deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* (footnote omitted).

Here, the trial court stated the other crimes evidence was being admitted because it was relevant in the establishment of intent, preparation, plan, knowledge, and modus operandi and the probative value was much greater than the prejudicial impact. Arguably, the evidence of prior crimes, wrongs, and acts helped to prove the defendant's conduct was intentional. Yet, the introduction of such evidence can hardly be justified on the basis of need or the inefficacy of alternative proof. For there was much more from which an inference of intentional conduct could be drawn in the evidence of the offense for which the defendant was being tried. There was even less justification to deem the evidence in question relevant on grounds that it showed preparation, plan, knowledge, and modus operandi.

"Preparation" seldom is an ultimate issue in a criminal case. 22 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5243. It often serves to establish identity. "For example, evidence that a car was stolen by the defendant may serve to identify him as the perpetrator of a subsequent robbery in which the car was used for escape." *Id.* (footnote omitted). But the identity of the assailant was not disputed here, and we discern no other basis to consider the evidence admissible under the rubric of "preparation."

"With the possible exception of prosecutions for conspiracy, plan or design is not an element of the offense; therefore, evidence that shows a plan must be relevant to some ultimate issue in the case." Wright & Graham, *supra,* § 5244 (footnotes omitted). Like evidence of preparation, proof of the existence of a plan often serves "to identify the perpetrators of the crime." *Id.* (footnote omitted). But we fail to see how such proof was of consequence to the determination of the case at hand.

The use of other crimes evidence is also permissible to show the act in question was performed with guilty knowledge. E.W. Cleary, *supra,* § 190. Michael Castro, however, did not claim the crime for which he was being tried was committed without such knowledge. Thus, the trial court's ruling that the evidence could be admitted because it established knowledge does not pass muster too.

Where "the characteristics and methodology of the prior crime or act [are] so strikingly similar to those of the crime or act being litigated as to support the inference that both were the handiwork of the very same person[,]" evidence of the prior crime or act may be admitted. Haw. R. Evid. 404 Commentary. Still, the identity of the perpetrator of the crimes was not denied, and the admission of the other crimes evidence as proof of modus operandi cannot be justified here.

We therefore would have to say the incremental probative value of the evidence in question was not great. The trial court's allowance on the prosecution's case-in-chief of evidence likely "to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge[,]" *Michelson v. United States,* 335 U.S. 469, 476 (1948), was an abuse of discretion. On balance, the potential for unfair prejudice being generated by the evidence was far greater than its value in establishing facts of con-

sequence to the determination of the case. Haw. R. Evid. 403 and 404(b).

## III.

We turn from the trial court's ruling on the admissibility of other crimes evidence to the ruling that permitted the expert witness to state his opinion on the complaining witness' credibility. Inasmuch as the ruling was premised on *State v. Kim,* 64 Haw. 598, 645 P.2d 1330 (1982), the discussion of whether the court erred or not is centered on our decision there.

### A.

The defendant in *State v. Kim* was accused of having sexual intercourse with his thirteen-year-old stepdaughter in violation of HRS § 707-731. Not surprisingly, the putative victim was the lone witness to the offense. A week or so after it purportedly occurred, the child informed her mother of the sexual encounter with her stepfather. She was subjected thereafter to physical and psychiatric examinations at the Kapiolani Children's Medical Center.

When the case proceeded to trial in the circuit court, defendant's counsel attempted to impeach the complaining witness' story with insinuations that it was fabricated. He cross-examined her about boyfriends, and she denied she had one. But the youthful witness broke down and admitted she had a boyfriend after being confronted with a letter she wrote.

The State then called as an expert witness the psychiatrist who examined her at the medical center. The offer of proof was that his testimony would be supportive of the child witness' account of the alleged crime. The defendant's objection to the proffered testimony was overruled on the ground that the cross-examination had put the child's credibility sufficiently at issue to render the testimony admissible. The psychiatrist was qualified as an expert, and he gave testimony which included a statement that he found the child witness' account of the rape "believable."

The jury returned a guilty verdict, and the defendant appealed from the judgment that followed. Predictably, the issue on appeal was whether the jury should have been allowed to hear such tes-

timony. The appellant asserted that the testimony on the credibility of the complaining witness invaded the province of the jury, was not a proper subject for expert opinion, and its probative value was outweighed by its prejudicial effect. Though mindful that "[i]n a trial by jury, the jury is the sole judge of the credibility of witnesses[,] *State v. Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967)[,]" we approved the use of expert testimony in the situation under review.

We recognized that the admission of expert accrediting or impeaching testimony posed a threat to the jury's function since "such testimony may constitute 'an invitation to the trier of fact to abdicate its responsibility . . . upon the questionable premise that the expert is in a better position to make such a judgment.' *Comm. v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976)." *State v. Kim,* 64 Haw. at 602, 645 P.2d at 1334. Yet we were "reluctant to categorically preclude all such testimony, since . . . the virtually unanimous opinion of commentators [was] that under certain circumstances expert psychiatric testimony may reveal to the trier of fact characteristics or conditions of the witness which may assist the jury [in assessing] credibility." *Id.* (citation omitted). And since the legislature had recently adopted a code of evidence, we decided to consider the admissibility of the expert testimony in the light of standards enunciated there.[8]

"The critical inquiry with respect to expert testimony under our new code," we found, "is whether [it] 'will assist the trier of fact to understand the evidence or determine a fact in issue . . . .' Rule 702, Haw. R. Evid." *State v. Kim,* 64 Haw. at 604, 645 P.2d at 1336 (footnote omitted). We read other relevant provisions of the code as rendering the testimony admissible only if it is based "upon a sound factual foundation; any inferences or opinions [are] the product of an explicable and reliable system of analysis; and [the] opinions . . . add to the common understanding of the jury." *Id.* (citations and footnotes omitted). And of course, we read the code as conditioning admissibility on whether or not the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and the other factors delineated in Haw. R. Evid. 403. 64 Haw. at 605, 645 P.2d at 1336.

---

[8] Although the Hawaii Rules of Evidence were adopted before the appeal in *State v. Kim* was heard, the rules were not in effect when the case was tried.

Measuring the testimony of the psychiatrist against these standards, we decided the trial court did not abuse its discretion in allowing him to testify. Though troubled by the portion of the testimony where the expert flatly said he "found her story believable[,]" we nevertheless concluded the new code permitted the reception of expert testimony in the form of an opinion or inference embracing an ultimate issue to be decided by the jury if the testimony is otherwise admissible. *See* Haw. R. Evid. 704. Moreover, "[t]he nature of the . . . testimony presented [was] such that the jury could adequately assess and, if it chose to, disregard, the opinion of the expert[,]" as it had been instructed was its prerogative. 64 Haw. at 610, 645 P.2d at 1339.

## B.

But "[e]xpert testimony respecting witness credibility is not . . . appropriate [in] all situations. In most cases, the common experience of the jury should suffice as a basis for assessments of credibility." 64 Haw. at 607, 645 P.2d at 1337. The admission of expert testimony was sanctioned in *State v. Kim* because the common experience of the jury represented "a less than adequate foundation for assessing the credibility of [the] witness," a child sex-offense victim "whose claims [were] substantially uncorroborated." *Id.,* 645 P.2d at 1337-38 (citation and footnote omitted).

"[C]hild sexual abuse is a particularly mysterious phenomenon, often involving an unusual cast of characters who are involved in relationships that are seemingly inexplicable to most people." McCord, *Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions,* 77 J. Crim. L. & Criminology 1, 44-45 (1986). We were convinced in *State v. Kim* that expert testimony could reveal characteristics or conditions of the child victim of sexual abuse and further the jury's understanding of what in all likelihood was "unfamiliar and mysterious." McCord, *supra,* at 34.

The situation here bears slight, if any, resemblance to that in which the use of expert testimony on the issue of credibility was approved. To begin with, we would not deem attempted murder a phenomenon inexplicable to most people. The armed attack by Michael Castro was perpetrated in a nightclub, not in the privacy of a bedroom; it was witnessed by more than several persons. And the

charges against the defendant did not rest on the testimony of a "child complainant[] whose claims [were] substantially uncorroborated." *State v. Kim,* 64 Haw. at 607, 645 P.2d at 1337-38 (citing *People v. Russel,* 69 Cal. 2d 187, 443 P.2d 794, 70 Cal. Rptr. 210 (1968) ).

*State v. Kim,* in our considered opinion, was a rare case where the common experience of the jury was not likely to suffice as a basis for assessment of credibility. It was meant to deal with the problems posed when the testimony of a child sex-abuse victim is presented in the prosecution of the offense. If it is perceived as precedent for the allowance generally of expert testimony on credibility, the perception is erroneous.[9] The trial court thus abused its discretion in allowing the testimony tending to support the credibility of Charlotte Harkin. *See also State v. Black,* 109 Wash. 2d 336, 745 P.2d 12 (1987).

## IV.

We proceed from the evidentiary issues worthy of discussion to the defendant's claim that he was denied a fair trial because he was shackled during a portion of the trial and subsequently was

---

[9] *State v. Kim* is often cited by courts.in other jurisdictions. But it is cited generally in the context of child sex-abuse cases. *See Colgan v. State,* 711 P.2d.533 (Alaska Ct. App. 1985); *State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986); *People v. Gray,* 187 Cal. App. 3d 213, 231 Cal. Rptr. 658 (1986); *Wheat v. State,* 527 A.2d 269 (Del. 1987); *Allison v. State,* 179 Ga. App. 303, 346 S.E.2d 380 (1986), *rev'd on other grounds,* 256 Ga. 851, 353 S.E.2d 805 (1987); *State v. Snapp,* 110 Idaho 269, 715 P.2d 939 (1986); *State v. Lawrence,* 112 Idaho 149, 730 P.2d 1069 (Idaho Ct. App. 1986); *People v. Server,* 148 Ill. App. 3d 888, 499 N.E.2d 1019 (1986); *State v. Myers,* 382 N.W.2d 91 (Iowa 1986); *Commonwealth v. Ianello,* 401 Mass. 197, 515 N.E.2d 1181 (1987); *State v. Myers,* 359 N.W.2d 604 (Minn. 1984); *State v. Garden,* 404 N.W.2d 912 (Minn. Ct. App. 1987); *State v. Geyman,* ____ Mont. ____, 729 P.2d 475 (1986); *In re Linda K.,* 132 A.D.2d 149, 521 N.Y.S.2d 705 (1987); *People v. Grady,* 133 Misc. 2d 211, 506 N.Y.S.2d 922 (1986); *People v. Reid,* 123 Misc. 2d 1084, 475 N.Y.S.2d 741 (1984); *Dutchess County Dep't of Social Serv. ex rel. Janet C. v. Bertha C.,* 130 Misc. 2d 1043, 498 N.Y.S.2d 960 (1986); *In re Michael G.,* 129 Misc. 2d 186, 492 N.Y.S.2d 993 (1985); *State v. Kennedy,* 320 N.C. 20, 357 S.E.2d 359 (1987); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983); *Commonwealth v. Baldwin,* 348 Pa. Super. 368, 502 A.2d 253 (1985); *State v. Logue,* 372 N.W.2d 151 (S.D. 1985) (dissent); *State v. Petrich,* 101 Wash. 2d 566, 683 P.2d 173 (1984). The only case in which *Kim* was cited in another context was *United States v. Ellsworth,* 738 F.2d 333 (8th Cir. 1984), a tax case.

banished from the courtroom. Since "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment[,]" *Estelle v. Williams,* 425 U.S. 501, 503 (1976) (citation omitted), we begin our analysis with a brief review of the teachings of the Supreme Court in the particular area of concern.

## A.

"Central to the right to a fair trial . . . is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced at trial.' *Taylor v. Kentucky,* 436 U.S. 478, 485 (1978)." *Holbrook v. Flynn,* 475 U.S. 560, 567 (1986). "This does not mean, however, that every practice tending to single out the accused from everyone else in the courtroom must be struck down." *Id.* For "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings . . . ." *Illinois v. Allen,* 397 U.S. 337, 343 (1970). "[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants [are vested with] sufficient discretion to meet the circumstances of each case." *Id.* And the Supreme Court has suggested a trial judge may "bind and gag" a particularly obstreperous and disruptive defendant or "take him out of the courtroom." *Id.* at 343-44. Of course, the defendant's behavior must be of "an extreme and aggravated nature . . . to justify either his removal from the courtroom or his total physical restraint." *Id.* at 346.

But even a partial physical restraint of the accused while he sits before judge and jury is not to be lightly ordered, for shackling unmistakably indicates "the need to separate the defendant from the community at large[.]" *Holbrook v. Flynn,* 475 U.S. at 569. And it "is the sort of inherently prejudicial practice that . . . should be permitted only where justified by an essential state interest specific to [the] trial." *Id.* at 568-69. Where the accused is shackled at trial, the reviewing court must subject what happened to "close judicial scrutiny" to determine whether an "essential state interest" was furthered by the trial judge's order to have him shackled or whether less restrictive, less prejudicial means could have been

employed. *Elledge v. Dugger,* 823 F.2d 1439, 1451 (11th Cir. 1987) (citing *Estelle v. Williams, supra; Holbrook v. Flynn, supra; Woodard v. Perrin,* 692 F.2d 220, 221 (1st Cir. 1982); *Hardin v. Estelle,* 365 F. Supp. 39, 47 (W.D. Tex.), *aff'd on other grounds,* 484 F.2d 944 (5th Cir. 1973) ).[10]

## B.

The trial judge in the case at hand relied on *Illinois v. Allen, supra, State v. Brooks,* 44 Haw. 82, 352 P.2d 611 (1960), and Hawaii Rules of Penal Procedure (HRPP) 43(b)(2) in ordering that Michael Castro be restrained and later expelled from his trial. *Illinois v. Allen,* as we observed, stands for the proposition that while

> courts must indulge every reasonable presumption against the loss of constitutional rights, *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), . . . a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

397 U.S. at 343 (footnote omitted). The rule of penal procedure given as a basis for the judge's action, of course, is consistent with the rule in *Allen.*[11] *State v. Brooks,* a decision of this court antedating

---

[10] Where the challenged practice is not one deemed inherently prejudicial by the Supreme Court, the reviewing court must determine whether what the jurors saw posed "an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook v. Flynn,* 475 U.S. at 572.

[11] HRPP 43(b)(1) and (2) read:

**Continued Presence Not Required.** The further progress of a pretrial evidentiary hearing or of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived his right to be present whenever a defendant, initially present,

(1) voluntarily absents himself after the hearing or trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial); or

(2) engages in conduct which is such as to justify his being excluded from the courtroom.

*Allen, Estelle v. Williams,* and *Holbrook v. Flynn,* enunciated a rule that in order to prevent escape or violence, "the accused, in the sound discretion of the trial court, may be brought into a courtroom manacled and . . . there is no reversible error in the absence of a showing that the court clearly abused its discretion or that the defendant was actually prejudiced before the jury." 44 Haw. at 84, 352 P.2d at 613.

Upon cursory examination, what this court said in *Brooks* appears to have anticipated what the Supreme Court would say thereafter. A closer reading of our ruling, however, reveals it cannot serve to determine whether the restraint constituted reversible error here. The relevant teaching of the Court is that "[w]henever a courtroom arrangement is challenged as inherently prejudicial, . . . the question [is] not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether 'an unacceptable risk is presented of impermissible factors coming into play,' *Williams,* 425 U.S., at 505." *Holbrook v. Flynn,* 475 U.S. at 570.

Where the arrangement is inherently prejudicial, as it is when the defendant is compelled to sit through his trial in shackles, the judge's "assessment of jurors' states of mind cannot be dispositive . . . ." *Id.*[12] As we noted earlier, what is dispositive is the judge's assessment, after a searching examination of the circumstances, that the practice is "justified by an essential state interest specific to [the] trial[]" or not. 475 U.S. at 569.

Here, the record reveals the defendant was forced to sit through much of the trial fettered by irons because witnesses expressed fears that he might harm them, he was capable of inflicting physical harm, the means used earlier to administer such harm was in evidence, and the defendant sobbed during an early stage of the proceeding.

---

[12] In the Supreme Court's opinion, the judge's assessment of jurors' states of mind cannot be dispositive because:

> Even though a practice may be inherently prejudicial, jurors will not necessarily be fully conscious of the effect it will have on their attitude toward the accused. This will be especially true when jurors are questioned at the very beginning of proceedings; at that point, they can only speculate on how they will feel after being exposed to a practice daily over the course of a long trial.

475 U.S. at 570.

We do not mean to denigrate the trial judge's assessment of the need for physical restraint, but we cannot sanction the adoption of an inherently prejudicial practice in this case. The situation reflected in the record was not so far out of the ordinary as to justify the risk of "impermissible factors coming into play," *Estelle v. Williams*, 425 U.S. at 505 (citation omitted). Rather than the enforced display of a constant reminder to the jury that the defendant was one to be feared, "less restrictive, less prejudicial" means to further the state interest in protecting witnesses should have been explored. *See Elledge v. Dugger, supra; Holbrook v. Flynn, supra.*

Nor can we agree after perusing the record that the situation was such that Michael Castro's "trial [could not have been] carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. at 343. For we cannot say his "behavior was clearly of such an extreme and aggravated nature as to justify . . . his removal from the courtroom . . . ." 397 U.S. at 346.

## V.

The remaining issue worthy, in our estimation, of discussion is whether or not the jury should have been instructed that it could return guilty verdicts on both attempted murder and assault in the first degree. Put another way, the question is whether the State fulfilled its burden of making out prima facie cases on both charges. *See* HRS § 701-109 Commentary.

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one [crime] depends [in part] on the intent and objective of the actor." *Neal v. State*, 55 Cal. 2d 11, 19, 357 P.2d 839, 843, 9 Cal. Rptr. 607, 611 (1960). The test to determine whether the defendant intended to commit more than one offense in the course of a criminal episode " 'is whether the evidence discloses one general intent or discloses separate and distinct intents.' " *State v. Mendonca*, 68 Haw. ___, ___, 711 P.2d 731, 735 (1985) (quoting *State v. Martin*, 62 Haw. 364, 368, 616 P.2d 193, 196 (1980) ). If "there is but one intention, one general impulse, and one plan, . . . there is but one offense." *State v. Martin*, 62 Haw. at 368, 616 P.2d at 196 (quoting *People v. Howes*, 99 Cal. App. 2d 808, 818-19, 222 P.2d 969, 976 (1950) ).

In order to prove the defendant committed both offenses, the State was obliged to show that at one point the defendant intended to cause the death of Ms. Harkin and only meant to cause serious bodily injury at another. The State argues the attempted murder charge "was supported by the potentially fatal stab wound to the victim's neck" and the lesser charge "by the twelve relatively superficial stab wounds to the victim's back and shoulder areas." It maintains the knife thrust inflicting the grievous wound was separated in time from those resulting in the other wounds. This, it contends, was established because the near-fatal wound was inflicted "after the Defendant made eye contact with another male and the Defendant switched his hold on the victim."

The State would have us affirm the double conviction on what could easily be characterized as nebulous evidence of questionable significance. But its burden was to adduce "prima facie evidence" that there were "separate and distinct intents," *State v. Mendonca,* 68 Haw. at ____, 711 P.2d at 735, and "prima facie evidence" means "such evidence as, in the judgment of the law, is sufficient to establish a given fact," *Black's Law Dictionary* 1071 (5th ed. 1979). A prima facie case that there were two different crimes separated in time would, in our opinion, have to be established by something more substantial than the defendant's "making eye contact" with a witness and "switching his hold" on the victim.[13] Thus, the trial court erred in instructing the jury that it could return guilty verdicts on both attempted murder and assault in the first degree.

---

[13] The prior decisions of this court cited by the State in support of its position, *State v. Mendonca, supra,* and *State v. Pia,* 55 Haw. 14, 514 P.2d 580 (1973), do not support the State.

The dispositive facts in *Mendonca,* where the defendant's convictions of attempted robbery and attempted murder were affirmed, as recounted in the opinion were:

> Mendonca and [his companion] Yasay decided to rob a gambling "banker" (a person who holds gambling money proceeds). In the early morning hours of January 21, 1983, they drove after the car of Gary Ramos (hereinafter "Ramos") intending to rob him. While Yasay drove, Mendonca fired several shots and wounded Ramos. After chasing Ramos for a few miles and nearly crashing into Ramos' car, Yasay said, "Let's just let it go." Mendonca replied, "No; let's go man. *We have to get him now."* Transcript, August 8-9, 1984 at 139 (emphasis added). After Ramos' car crashed, Mendonca jumped out of Yasay's car and began shooting.

The judgment of conviction is vacated and the case is remanded for a new trial on the charge of attempted murder.

*Susan Barr (Ronette Horie* with her on opening brief), Deputy Public Defenders, for appellant.

*Cynthia S. Nakamura (Ann H. Aratani* on the brief), Deputy Prosecuting Attorneys, for appellee.

---

68 Haw. at ____, 711 P.2d at 732-33.

In *State v. Pia* the State appealed from the dismissal, on the ground of double jeopardy, of a charge against the defendants after they had pleaded guilty to the other charge brought against them. The trial court, "looking only to the information on its face, ruled that both counts alleged the same factual 'transaction' and" one was a lesser included offense of the other. 55 Haw. at 16, 514 P.2d at 583. This court disagreed, holding "that the State should have been afforded the opportunity to demonstrate that the first count of the information related to a factual incident separate from that upon which the defendants pleaded guilty in the second count." *Id.* at 17, 514 P.2d at 583-84.